HALL, Judge.
This is a proceeding to recover death benefits under the provisions of the Louisiana Workmen’s Compensation Act, brought by the widow of Elvin E. Munster, a deceased employee of the defendant, Barclay Compress Co., Inc. Plaintiff alleged on information and belief that on March 11, 1957 while her husband was acting within the course and scope of his employment as a cotton weigher and checker “the decedent fell, or was thrown or pushed from a bale of cotton” and received a ruptured spleen which caused his death.
Defendants denied plaintiff’s allegations and alleged that (1) the death did not occur in the course, and scope of decedent’s employment, and, (2) that decedent’s death resulted from his intoxication.
The trial judge found that plaintiff failed to prove decedent “fell in any particular manner and injured himself” and further that decedent was intoxicated at the time of the accident. The suit was dismissed and plaintiff appealed.
Only questions of fact are presented by this appeal, to wit: (1) whether the employee died as the result of an accident which occurred in the course and scope of his employment, and (2) whether the accident resulted from the employee’s intoxication at the time of his injury.
The record shows that Munster, the deceased employee, had been employed for six years as a checker and weigher at the Barclay Warehouse. His work day was from 8:00 A.M. until 5:00 P.M. On March 11, 1957 he went to work at his usual hour. The evidence shows that he was drinking during the day while on the job. Appar *826 ently this was not unusual for him nor for other employees including some of the superintendents. There is testimony to the effect that decedent was a heavy drinker and frequently stayed in the warehouse after working hours and on week ends drinking. At 3:00 P.M. on March 11, 1957 Munster was seen drinking wine by Ronald B. Ball, then a clerk in the office of the employer. Ball joined Munster and had a drink with him.
At 3 :30 P.M. Ball and the assistant superintendent, Andrew E. Johnson, found Munster asleep on top of a bale of cotton in Room 9 of the warehouse. Johnson suggested to Munster’s son, Emile, who was also an employee, that he should take his father home. Emile indicated that he didn’t care what happened to his father, and left without even going in to see him. Johnson went back to Room 9 at 4:00 P.M. and found decedent walking around the room.
When the night- watchman came on duty at 5 :00 P.M. he was told by Thomas Va-carro that Munster was in the back and to check him and see if he was all right. At 5:20 or 5:25 P.M. the night watchman found Munster in Room 10. He was sitting on the floor with his back propped against a cotton bale. His trousers were off and the watchman asked Munster how he was feeling. Munster assured him that he was feeling all right and declined the watchman’s suggestion that he get his wife or one of his boys to take him home. The watchman testified that Munster looked fresh, that his color was normal, and that he gave no appearance of being ill.
At about 7:05 P.M., the night watchman in making his rounds found Munster in the same room but this time he was lying on the floor at a place 10 feet removed from where he had been sitting. Apparently under the impression that Munster was asleep, the watchman did not speak to him.
At 9:05 P.M. the watchman observed Munster in the same position, and did not disturb him. Finally at 10:05 P.M., the watchman decided he would wake him up and take him home, but when he attempted to arouse him he discovered that Munster had a “death color” and was “kind of stiff”, so he summoned the police. An ambulance arrived shortly thereafter but decedent was pronounced dead on arrival at Charity Hospital at 11:10 P.M.
The Coroner’s office performed an autopsy the following afternoon. The coroner found that the direct cause of death was hemorrhage into the abdominal cavity which proceeded from a ruptured spleen. The spleen had two long and deep lacerations in it, one 5 centimeters in length by 1.5 centimeters in depth, and the other 3 centimeters in length by 1 centimeter in depth. The abdominal cavity contained approximately two liters of blood. Among other findings by the coroner were that Munster’s spleen was markedly enlarged being about three times its normal size; he had cirrhosis of the liver in an advanced state; and had contusions and abrasions of both knees and the right hip, contusions in the occipital region of the scalp, and a laceration in the region of the right eye.
It is undisputed that the cause of Munster’s death was a ruptured spleen. All of the medical evidence shows, and counsel agree, that the rupture could not have occurred except as a result of trauma. The medical testimony elicited shows, however,, that a spleen as diseased and oversized as Munster’s could be ruptured and could hemorrhage as the result of only a slight blow, such as simple tapping over the area of the spleen. Whether the trauma received by Munster was severe or slight or how it happened cannot be determined from the record but we must hold that it was accidental there being no hint in the record to the contrary,
The testimony in the case leaves no doubt that Munster was an habitual heavy drinker and was drinking on the day of the accident. As the trial judge pointed out, *827 no doubt the reason the son and the other •employees didn’t disturb him (especially the night watchman who said he was a friend) was that they knew his frequent condition. However we are unable to hold that the defendants have successfully borne the burden of proving that intoxication was the proximate cause of the accident. (See LSA-R.S. 23:1081; Malone-Louisiana Workmen’s Compensation Sec. 344 and ■cases there cited).
As a matter of fact we do not know how the accident happened or what caused it. The all important question is: when did the accident occur? If it happened after Munster had quit work for the day and while he was loitering on the employer’s premises it would not have occurred in the ■course of his employment and no recovery ■could be had.
The burden is on plaintiff to prove affirmatively that the accident occurred in the course of Munster’s employment, that is to say that it occurred during his working hours or immediately thereafter as he was preparing to leave the premises.
The watchman testified that Munster was all right at 5 :20 P.M. His death occurred at some unknown time between 5 :20 P.M. and 10:05 P.M. Did the trauma which ruptured his spleen and caused his death ■occur before 5 :00 P.M., his quitting time, or after that time? All that the medical experts could say was that Munster would have gone into shock shortly after the rupture and become unable to move about and that death must necessarily have followed “within several minutes or several hours”.
In order to meet the burden of proof, plaintiff adduced the testimony of decedent’s son, Emile, who testified that Thomas Va-carro, an assistant superintendent at the warehouse, came to him between 3 and 4 P.M. and told him that his father had had a fall and that 15 or 20 minutes later he heard Johnson tell the same thing to O’-Brien, another employee. Emile testified that he did not go to his father because Vacarro told him that he thought he was all right.
This testimony by the decedent’s son is the only evidence in the record even remotely tending to show that decedent suffered a fall or any other injury during working hours. It is pure hearsay and we do not think that defendants were thereby obliged to place Vacarro on the witness stand to rebut it. Moreover the trial court found his testimony to be “most unimpressive”.
For the foregoing reasons it is our opinion that plaintiff has not met the burden of proving that decedent suffered an accident “arising out of and in the course of his employment”. The judgment appealed from is affirmed.
Affirmed.